UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ALEXANDER LEVINE,

                                  Plaintiff,              <u>MEMORANDUM OPINION</u>
                                                                  <u>AND ORDER</u>

      -against-

DEXTER LOVING and DEXTER LOVING d/b/a        CV 03-1799 (LDW) (ETB)
REYDEX MARKETING,

                                  Defendants.
------------------------------------------------------------------------X

       Plaintiff commenced this breach of contract action pursuant to 28 U.S.C. § 1332 on April 14, 2003. On October 13, 2004, a default judgment was entered against defendant. Presently before the Court is defendant's motion to vacate the default judgment and re-open the matter for further proceedings. For the reasons explained herein, defendant's motion is granted.

## **BACKGROUND**

       Alexander Levine (hereinafter "plaintiff" or "Levine") and Dexter Loving (hereinafter "defendant" or "Loving") entered into a service contract on November 5, 2002. (Pl.'s Ex. A.) In exchange for payment of $150,000.00, Loving promised to assist plaintiff in the creation of a phone card venture. (<u>Id.</u>) Pursuant to the agreement, Loving promised to wire $150,000.00 to Kata Communications, Inc. (hereinafter "Kata") for activation of the phone cards within approximately three days of receiving plaintiff's deposit. (<u>Id.</u>) In the event of a breach, the contract also provided for the return of unused funds to plaintiff within five business days of the initial wire transfer. (<u>Id.</u>)

       On April 14, 2003, plaintiff filed a complaint alleging that Loving breached the

1

contract by failing to properly activate plaintiff's phone cards and return unused funds to him. (Pl.'s Compl. at 3.) The complaint and summons were served on defendant on May 21, 2003. (Deposition of William Nieves, signed by Linda J. Jumper, Notary Public on May 22, 2003.) Defendant responded to plaintiff's complaint on June 9, 2003, and denied any wrongdoing with respect to the November 5, 2002 contractual agreement. (Def.'s Answer at 1-2.)

On August 5, 2004, Judge Wexler denied defendant's motion for summary judgment without prejudice because the parties never completed their briefing on defendant's motion. (Order by Judge Wexler dated August 5, 2004.) More than a month later, on September 20, 2004, Kurt W. McCabe ("McCabe"), defendant's attorney, asked for a pre-motion conference in anticipation of filing another motion for summary judgment, but no such conference ever occurred. (Def.'s Exs. E and L.)

Subsequently, McCabe and the plaintiff's attorney, Kurt Meyerson ("Meyerson") entered into settlement negotiations, with the assistance of Judge Wexler's law clerk, Peter Ausili ("Ausili"). The settlement negotiations culminated in a dispute between the parties as to whether or not the parties had reached a settlement. Based on the defendant's belief that the parties had effectuated a settlement, and/or the defendant's contention that he did not receive proper notice of the trial dates, the defendant did not appear in Court on the days the case was scheduled for trial. Following the defendant's second non-appearance, Judge Wexler entered a default judgment in favor of the plaintiff.

On October 27, 2004, McCabe filed a motion to vacate the default judgment against defendant. (Def.'s Ex. S.) Plaintiff never responded to the defendant's motion. On March 31, 2005, Judge Wexler signed Meyerson's proposed judgment and awarded $118,000.00 to

2

plaintiff. (Def.'s Ex. T.) However, Judge Wexler held the default judgment in abeyance until the issue concerning defendant's motion to vacate the default judgment was resolved. A hearing was scheduled for May 4, 2005. (Id.)

On May 4, 2005, Judge Wexler re-scheduled the evidentiary hearing for the next day, May 5, 2005. (Transcript of the May 4, 2005 hearing before Judge Wexler at 4.) At the May 5, 2005 hearing, defense counsel asked Judge Wexler to recuse himself pursuant to 28 U.S.C. § 455 because he and Ausili had knowledge of "disputed evidentiary facts . . . ." (Transcript of the May 5, 2005 hearing before Judge Wexler at 2-3.) As a result, Judge Wexler reserved judgment and re-scheduled a hearing on the issue for June 28, 2005. (Id. at 6-7.) On June 28, 2005, with the consent of all parties, Judge Wexler referred the pending motion to vacate the default judgment to the undersigned for the limited purpose of a final determination on the motion. (Order of Referral by Judge Wexler dated June 28, 2005.)

### **EVIDENTIARY HEARING**

An evidentiary hearing was held before the undersigned on July 7, 2005. At the hearing, McCabe testified that during the week of October 7, 2004, Ausili conducted numerous telephone conferences with the individual parties, and that on October 7th all settlement terms were agreed to. (Tr. at 13.) McCabe testified further that on October 7, 2004, he faxed a letter to Robert A. Meyerson (hereinafter "Meyerson"), plaintiff's attorney, confirming the agreement to settle the matter. (Id. at 13-14.) The letter, introduced at the hearing, outlined the following terms:

> Dexter Loving, Defendant, agrees to pay to
> Alexander Levine, Plaintiff, the amount of $30,000
> payable in one installment of $15,000, due upon
> receipt of a written General Release executed by
> Alexander Levine and the withdrawal of this matter

3

>     with prejudice, together with six installment
>     payments of $2,500 due each month during the
>     subsequent six months.

(Def.'s Ex. F.) The letter also stated: "Due to this agreement, the trial scheduled for tomorrow will not occur and the parties will convene to document and effectuate the above agreement." (Id.) McCabe testified that in addition to faxing the letter to Meyerson, he faxed a copy to the Court, in order to confirm that the trial scheduled for the next day, October 8, was not going forward. (Tr. at 18; see also Def.'s Ex. G.) McCabe testified that based on his belief that the case was settled, and that no trial would occur, he did not appear in court ready for trial the next morning, October 8, 2004. (Tr. at 33.) McCabe's office is located in Harrisburg, Pennsylvania. Plaintiff's counsel is located in Rockville Center, Long Island.

At 10:39 p.m. on the night of October 7, 2004, Meyerson faxed a letter to McCabe, stating that "[y]our letter does not set forth the agreement between the parties. I will be in Court tomorrow morning ready for trial in compliance with the scheduling Order which set this case down for trial on October 8, 2004 before Justice Wexler." (Def.'s Ex. H.) On October 8, 2004, at 8:19 a.m., McCabe responded by facsimile to Meyerson's letter, disputing Meyerson's objections to the terms of the settlement as set forth by McCabe in the October 7 letter. (Def.'s Ex. I). McCabe stated therein that "[g]iven your late notice of the alleged objections, we obviously will not appear in Court today. . ." . (Def.'s Ex. I.) McCabe testified that his office is five and one half to six hours away from the court house. (Tr. at 35.)

Both parties agree that on October 8, 2004, the case was called for trial; Meyerson appeared on behalf of plaintiff, and McCabe did not appear. (Def.'s Ex. K.) Meyerson

4

testified that, on October 8, 2004, Ausili informed him in person that the trial was adjourned to October 13, 2004 with a settlement conference scheduled for October 12, 2004. (Tr. at 70-71.) McCabe testified that he never received notice of the October 12, 2004 settlement conference or the October 13, 2004 trial date. (Tr. at 27, 31, 34 .) Ausili testified that he notified McCabe via telephone about the October 12, 2004 settlement conference and October 13, 2004 trial date. (Tr. at 123.) Although the adjournment was not recorded on the Civil Docket until October 18, 2004, the Court credits Ausili's testimony that he told both counsel to appear in court on October 12 for a settlement conference and October 13 for trial, unless "they actually settled the case." (Tr. at 126.)

After October 8, 2004, the parties continued to attempt to settle the matter. At some point the parties again agreed in substance on a settlement, and Meyerson drafted a stipulation of settlement. McCabe made handwritten changes on it and then returned it to Meyerson. (See Def. Ex. M.) Meyerson testified that on October 10, 2004, he drafted a revised version of the stipulation, incorporating McCabe's handwritten changes. (Tr. at 72.) He testified that he faxed this version of the settlement to McCabe on October 10 at 11:41 p.m, and e-mailed a copy as well. (Tr. at 73-74; Def.'s Ex. M)

No activity occurred in the case on October 11, 2004, which was Columbus Day, a federal holiday. (Tr. at 23.) Meyerson testified that he appeared in Court on October 12, the date of the settlement conference, after not having communicated with McCabe since sending the final version of the settlement to McCabe on October 10. (Tr. at 74.) McCabe was not present in Court, because, according to his testimony, he was not notified of the conference. (Tr. at 27, 31, 34.) I do not credit McCabe's testimony in this regard. As noted above, McCabe was advised by Peter Ausili by phone on October 8th. Meyerson testified

that on October 12, Ausili conducted a three-way conference with Meyerson in Court and McCabe on the phone, and made it clear that the case was scheduled for trial on October 13, unless the case settled. (Tr. at 75.)

Later, on the evening of October 12, 2004, Meyerson and McCabe resumed settlement negotiations by phone on behalf of their clients. (Tr. at 76; Def.'s Ex. O.) McCabe testified that shortly thereafter, he signed the revised stipulation of settlement that he had received from Meyerson via e-mail on October 10, 2004, without making any changes, and had his client also endorse it. (Def. Ex. P and Tr. at 23-25.) At 7:24 p.m. on October 12, McCabe faxed the signed stipulation of settlement to Meyerson, with a note on the cover sheet stating: "Kindly have your client execute the attached agreement. Upon receipt of an originally executed Stipulation from you in proper form, the money will be forthcoming, provided, however, that you supply complete wire transfer information/instructions to us." (Def.'s Ex. P.)

McCabe testified that, on October 12, as of the time he returned the stipulation containing his and his client's signatures, he believed the case to be "completely, finally settled," and all that remained was the need to get the plaintiff's wire transfer information in order to wire the funds. (Tr. at 25-27.) I credit McCabe's testimony and find it reasonable that McCabe believed, upon his return of the stipulation signed by both himself and his client, that the case was settled.

On October 13, 2004, the case was called for trial. Meyerson was present and McCabe was not. Meyerson testified that he initially asked Judge Wexler if a letter could be faxed to McCabe in an attempt to settle the case, and that when Judge Wexler denied plaintiff's application, he requested that an inquest be held. (Tr. at 84.) There is no

6

testimony by Meyerson that he disclosed to the Court the signed stipulation of settlement he received from McCabe and his client, in compliance with all the terms and conditions demanded by the plaintiff. Judge Wexler held a conference and entered a default judgment against the defendant. (See Civil Cause for Trial Minute Entry dated October 13, 2004, Document Number 50 on the Docket Sheet.)

At the evidentiary hearing before the undersigned, Meyerson testified for the first time that he did not prepare the stipulation of settlement (Defendant's Exhibit P), that McCabe testified he had received from Meyerson via email and returned to Meyerson fully executed. (Tr. at 77-78.) Meyerson testified that the stipulation of settlement entered as Defendant's Exhibit P includes terms that were not agreed upon, and not reflected in Defendant's Exhibit M, the draft of the stipulation that Meyerson testified he prepared and sent to McCabe. (Id.) According to Meyerson's testimony, the allegedly new terms that materialized in the stipulation entered as Defendant's Exhibit P, to which he never agreed, include the requirement that "[a]t the time of the execution of this Stipulation, this action shall be discontinued with prejudice. Plaintiff shall prepare, execute and file all necessary paperwork to discontinue this action with prejudice." (Tr. at 78-79. See also Def.'s Ex. P ¶ 6.) Meyerson testified that he was concerned with this language because he had never before discontinued a case and given a general release before cashing the check from his adversary, and he felt that if he did so, he would have no recourse if the defendant defaulted on the settlement. (See Tr. at 87-88.)

Meyerson also testified that he additionally objected to statements included in the cover letter received from defendant with the signed stipulation (Defendant's Exhibit P), including (1) the request that the plaintiff send "an originally executed Stipulation. . .in

7

proper form"; and (2) the defendant's statement that "the money will be forthcoming, provided, however, that you supply complete wire transfer information/instructions to us." (Tr. at 79-81.) As Meyerson testified at the evidentiary hearing:

> I don't agree [that the statements in the cover letter] were minor. I found them disturbing. . . it calls for the receipt of an originally executed stipulation in proper form. And I don't know what that means. And money will be forthcoming, but it doesn't say when. And it says, provided that you supply complete wire transfer instructions to us. Now, in the stipulation I drafted there were complete wire instructions. It has my client's bank account and account number. And it also says that it can be paid by check made payable to me, which is more common. So, I was just disturbed that there were things– there were all of a sudden new things that we hadn't discussed.

(Tr. at 80.)

I do not credit Meyerson's testimony concerning the reasons he refused to countersign the stipulation and settle the case. As the defendant pointed out at the hearing, the "new" terms which allegedly materialized in paragraph six of the stipulation after Meyerson sent the document to McCabe did not frustrate the intention of the agreement. Meyerson testified that the language would leave him without recourse if the defendant defaulted; however, the last sentence of paragraph six notes that if the defendant defaults, "Plaintiff's sole remedy is to obtain judgment pursuant to Section 3 of this stipulation." (Def.'s Ex. P ¶ 6.) Paragraph three of the stipulation entitled the plaintiff, in the event of a default, to apply to the Court for an Order granting judgment in favor of the plaintiff in the amount of the unpaid sum plus a default penalty. (See id. ¶ 3.) Thus, regardless of who drafted paragraph six of the agreement, it is clear that the language did not "torpedo" the settlement, as Meyerson claims.

Similarly, in so far as Meyerson testified that McCabe's request for complete wire transfer information, included in the cover letter sent with the signed stipulation, amounted to a

"new term" of the settlement, I do not credit this testimony. Although Meyerson included some wire transfer information in the stipulation, he failed to include the bank's routing number, a necessary piece of information. (See Tr. at 115.) When alerted to this detail at the hearing, Meyerson responded, "If [McCabe] needed something additional, he would have brought it up before this [stipulation] was sent out." I do not accept Meyerson's claim that McCabe's failure to request the routing number at some earlier point contributed to Meyerson's refusal to sign the stipulation the night before trial.

Moreover, while comparing the two documents on cross-examination, Meyerson acknowledged that he had received defendant's Exhibits M and P (the two drafts of the stipulation in question) a few weeks in advance of the hearing, but that he made no effort to look through his files or his email records to see if he had a copy of the stipulation of settlement in the form he alleges he sent it. (Tr. at 97-102.) Nor has any such document been submitted after the hearing. Meyerson testified that it was his regular custom and practice to keep copies of correspondence he send to adversaries in the context of litigated matters, but that he did not have a copy of the letter he wrote to McCabe, which accompanied the stipulation of settlement that he sent to McCabe (Def.'s Ex. M.)

I find that Meyerson has failed to make any effort to support his claim that the defendant added terms to the stipulation that had not been agreed upon, and I do not credit Meyerson's testimony concerning his reasons for refusing to sign the stipulation of settlement. Meyerson knew that McCabe was not present on the 13th, as he should have been, and Meyerson capitalized on his adversary's absence, notwithstanding the signed settlement agreement that McCabe had provided the night before. Lastly, there is no evidence here that Meyerson disclosed the signed settlement agreement to Judge Wexler at any time prior to seeking the

9

judgment by default.

## DISCUSSION

I.  Legal Factors To Be Considered When Vacating A Default Judgment Under Rule 60(b)

Federal Rule of Civil Procedure 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . excusable neglect . . . or . . . any other reason justifying relief from the operation of the judgment." Rule 60(b), Fed. R. Civ. P. See also Sec. and Exch. Comm'n v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998) ("Rule 60(b) provides, in pertinent part, that the district court may grant a motion for relief from a judgment on the ground of 'excusable neglect,' or for 'any other reason justifying relief from the operation of the judgment[.]'") (citations omitted).

It is well-settled in this Circuit that, in order to vacate a default judgment under Rule 60(b), a district court must consider the following three factors: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." Id. See also Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 171 (2d Cir. 2001) (citing Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243 (2d Cir. 1994); Davis v. Musler, 713 F.2d 907, 915 (2d Cir. 1983)); Badian v. BrandAid Communs. Corp., No. 03 Civ. 2424, 2005 U.S. Dist. LEXIS 8395, at *6 (S.D.N.Y. May 6, 2005). To the extent that "doubt exists as to whether a default should be . . . vacated," the United States Court of Appeals for the Second Circuit has held that "the doubt should be resolved in favor of the defaulting party." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993). See also Dixon v. Ragland, No. 03

Civ. 826, 2005 U.S. Dist. LEXIS 10117, at *8 (S.D.N.Y. May 19, 2005) ("These factors are to be construed generously in favor of defaulting parties.") (citing Enron, 10 F.3d at 96); Davis, 713 F.2d at 915.

    A.    Willful Default

The first consideration is whether the defaulting party has willfully defaulted in bad faith. American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 60 (2d Cir. 1996). At the very least, "willfulness" connotes "conduct that is more than merely negligent or careless." Sec. and Exch. Comm'n v. McNulty, 137 F.3d 732, 738 (2d Cir. 1998). See also Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 634 (2d Cir. 1998) (quoting American Alliance Ins. Co., Ltd., 92 F.3d at 60). Furthermore, absent prejudice to a non-defaulting party, a defaulting party should not be penalized for mistakes committed by his attorney, "unless there is a clear record of previous delay, willful contempt or contumacious conduct . . . ." Estes-El v. Caufield, No. 80 Civ. 4472, 1990 U.S. Dist. LEXIS 1606, at *6 (S.D.N.Y. Feb. 8, 1990) (citing Ford v. Fogarty Van Lines, Inc., 780 F.2d 1582, 1583 (11th Cir. 1986); Blois v. Friday, 612 F.2d 938, 940 (5th Cir. 1980)).

Here, according to the credible evidence, McCabe made a good faith effort to resolve this matter on October 12, 2004. After speaking with Meyerson via the telephone, both McCabe and his client endorsed the stipulation of settlement that Meyerson sent via e-mail on October 10, 2004 without making any changes, and faxed the document to Meyerson for execution by plaintiff. As a result, I find that McCabe reasonably believed that the matter was settled and would not proceed to trial the following day. McCabe's conduct was not the product of willful bad faith.

    B.    Meritorious Defense

The Court must next consider whether the defendant has established a meritorious defense. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" Sec. and Exch. Comm'n v. McNulty, 137 F.3d 732, 740 (2d Cir. 1998) (citations omitted). According to the United States Court of Appeals for the Second Circuit, "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996).

Here, defendant has argued that the terms of the contract between plaintiff and defendant, by which the plaintiff loaned the defendant money for a start-up venture, required only the return to plaintiff of unused funds. (Def.'s Ex. E.) Defendant has offered to produce every bill he received from vendors, as well as sworn affidavits from vendors and payments made to them, to establish that he used the money for reasonable and necessary expenses and did not divert the funds. (Def.'s Ex. E.) Plaintiff has made no argument in response, and even at the hearing, plaintiff's counsel, who failed to file any opposition to the pending motion, did not contend that the defendant failed to provide adequate evidence of a meritorious defense. Accordingly, defendant has made a sufficient showing of a meritorious defense to satisfy the second prong, discussed above.

      C.      <u>Prejudicial Effect On The Non-Defaulting Party</u>

Finally, in deciding a motion to vacate a default judgment, the court is required to consider whether granting the defaulting party's motion will prejudice the non-defaulting party. To establish prejudice as a ground for denying a defaulting party's motion to vacate a default judgment, a non-defaulting party must show that the "delay will 'result in the loss of evidence,

create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983) (quoting C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil, § 2693 at 536-537 (1983)).

Here, plaintiff has not submitted opposing papers to defendant's motion to vacate the October 13, 2004 default judgment and re-open the matter for further proceedings. Plaintiff has failed to claim that a judicial order vacating the aforementioned default judgment will prejudice his client. Accordingly, I find that granting defendant's motion to vacate the October 13, 2004 default judgment will not cause prejudice to the non-defaulting party and therefore the third prong is also satisfied.

## II.     Equitable Considerations

In addition to the factors enumerated in Rule 60(b), in the interest of justice, a court may take into account "[o]ther relevant equitable factors . . . , for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993) (citing Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986)).

Upon review of the record, it is clear that a court order denying defendant's motion to vacate the default judgment would bring about an unfair result. On at least two occasions, the parties agreed to a settlement in the amount of $30,000.00. Indeed, at the evidentiary hearing, the principal settlement amount of $30,000.00 was never disputed. Judge Wexler issued the $118,000.00 default judgment against defendant on October 13, 2004. In the event that the default judgment is not set aside, the plaintiff will reap a windfall nearly equal to four times the amount that plaintiff himself was willing to resolve the matter for on October 12, 2004.

## **CONCLUSION**

For the foregoing reasons and based on the evidence submitted, defendant's motion to vacate the October 13, 2004 default judgment and re-open the matter for further proceedings is granted. Accordingly, this action is referred back to Judge Wexler for further proceedings.

SO ORDERED:

Dated: Central Islip, New York
September 13, 2005

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge
